# UNITED STATES DISTRICT COURT
for the
District of Hawaii

**SEALED**
**BY ORDER OF THE COURT**

| | |
|---|---|
| United States of America ) | |
| v. ) | Case No.  MJ25-01497 WRP |
| ELIAS DAVID ) ) ) ) ) | |
| Defendant(s) | **FILED UNDER SEAL PURSUANT TO CRIMLR5.2(a)(1)** |

```
FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
Dec 1, 2025 3:20 PM
Lucy H. Carrillo, Clerk of Court
```

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of February 23, 2024 in the county of Honolulu in the District of Hawaii, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251(a) | Production of Child Pornography |

This criminal complaint is based on these facts:

See attached Affidavit in Support of Criminal Complaint.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Sherwin Chang, FBI
*Printed name and title*

Sworn to under oath before me telephonically, and attestation acknowledged pursuant to Fed.R.Crim.P. 4.1(b)(2).

Date: December 1, 2025

City and state:  Honolulu, Hawaii

Hon. Wes Reber Porter, U.S. Magistrate Judge
United States Magistrate Judge



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ELIAS DAVID,<br><br>Defendant. | Case. No. MJ25-01497 WRP<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Sherwin Chang, being first duly sworn, depose and state the following:

**INTRODUCTION**

1. This affidavit is submitted for the purpose of establishing probable cause that ELIAS DAVID, the defendant, committed the following offense on or about February 23, 2024, within the District of Hawaii: 18 U.S.C. § 2251(a) (Production of Child Pornography), which makes it a crime to knowingly, use, persuade, induce, or entice a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct and which depictions were produced using materials that had been transported in interstate or foreign commerce.

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), Honolulu Field Office. I have been a Special Agent since January 2007. From July 2007 to December 2014, I was assigned to the FBI's Los Angeles Division, where my investigative assignments included national security and criminal matters, specifically counterintelligence and complex financial crimes. In January 2015, I reported to FBI Honolulu where I am currently assigned to the Violent Crimes Squad investigating juvenile sex trafficking and crimes against children. In this role, I investigate criminal violations relating to child exploitation and violations pertaining to the illegal production, distribution, receipt, and possession of child pornography. Through my training and experience, I have observed and reviewed numerous examples of child pornography in various forms of media including computer and cellphone media. I have utilized court-authorized search warrants, conducted physical surveillance, and interviewed subjects and witnesses.

2. This affidavit is intended to show only that there is probable cause for the criminal complaint and does not set forth all of my knowledge about this matter. I am familiar with the facts set forth in this affidavit based upon my personal knowledge and/or information provided to me by other law enforcement personnel and/or witnesses. Summaries and statements from conversations do not include references to all topics covered in the conversations. This affidavit is not

intended to include each and every fact and matter observed or known to the government.

## PROBABLE CAUSE

**A.     The Initial report**

3.     On July 12, 2024, the Honolulu Police Department ("HPD") received a report that a 17 year old girl (hereafter "MV1"), born in February 2007, was having sexual intercourse with DAVID, her 37-year-old club volleyball coach. Specifically, in June 2024, MV1's aunt discovered a communication between MV1 and DAVID and when asked about this communication, MV1 disclosed that she and DAVID were in a sexual relationship. As a result, MV1's aunt and mother went to HPD to file a police report.

4.     According to MV1's aunt, and later confirmed by MV1 in an interview with HPD, DAVID is a family friend of MV1's and has been her volleyball coach since she was approximately 13 years old. During the relevant time period, DAVID was also employed as a firefighter for the Department of Defense (Federal Fire) and worked at Joint Base Pearl Harbor Hickam, Federal Fire Station 9, located in Ewa Beach, Hawaii.

**B.     Interview of MV1 on July 16, 2024**

5.     On July 16, 2024, a forensic interview of MV1 was conducted at the Children's Justice Center Oahu by an HPD detective. I am familiar with the

substance of this interview because I have reviewed the reports and the video recording of the interview. In the interview, MV1 stated the following relevant facts:

    a.    MV1 stated that she has known DAVID for several years, and that he has been her volleyball coach since she was 13 years old. MV1 also stated that DAVID was providing extra training to prepare her for college.

    b.    MV1 stated that the sexual relationship with DAVID began sometime in February 2023, after a volleyball trip to Las Vegas, and after she had turned 16 years old.[1] MV1 admitted to engaging in different types of sexual contact with the DAVID, including oral and vaginal sex.

    c.    MV1 stated that sexual relations with DAVID began after her 16th birthday, but her feelings for DAVID had developed before that.[2]

    d.    MV1 stated that in May 2023, DAVID's wife found out about their relationship and the fact that MV1 and DAVID have been communicating.

---

[1] MV1 turned age 16 in February 2023, which is the age of consent in the State of Hawaii.

[2] Based on my training and experience, MV1 may have been aware that 16 years old is the age of consent in Hawaii, and thus omitted mention of a sexual relationship prior to that date in order to keep DAVID from getting into trouble.

      e.      MV1 stated that their sexual activities would occur at the fire station where DAVID worked, at a warehouse next to the fire station[3] as well as DAVID's home and in DAVID's car.

      f.      MV1 stated that she would sometimes catch a rideshare car to meet DAVID at his fire station to meet up with him. MV1 stated that DAVID would mostly pay for the rideshare service.

      g.      During the interview, MV1 identified a known photograph of DAVID as the person with whom she was having a sexual relationship.

**C.    Interview with DAVID**

6.    On July 16, 2024, DAVID was arrested for Sexual Assault in the 2nd Degree in violation of the Hawaii Revised Statutes Section 707-731 by HPD Officers at HPD's main station, located at 801 South Beretania Street. After he was booked, DAVID agreed to talk to detectives about this case, waived Miranda and was interviewed.

---

[3] HPD investigators conducted a crime scene investigation at the warehouse across the street from Federal Fire Station #9. The warehouse was found to be abandoned, but in one of the rooms, investigators found weight lifting equipment, basic furniture, and a bed, consistent with MV1's statement that she would meet DAVID there for sexual activity. In order to access the warehouse, MV1 stated that she had to climb under a chain link fence that was partially propped up. Investigators located this chain-link fence, including a section that was propped up, consistent with MV1's statement.

7.      During the interview, DAVID stated in substance the following relevant facts:

    a.      DAVID stated that he was a youth volleyball coach, and he coached children from 10 years old to 18 years old. He stated that he had coached MV1 since she was approximately 13 to 14 years old.

    b.      DAVID stated that other minor female volleyball students had made sexual advances on him in the past, but he never acted on them until MV1.

    c.      DAVID stated that at some point while coaching and training MV1, DAVID and MV1 began to develop feelings for each other and "fell in love." DAVID admitted that he and MV1 engaged in a sexual relationship. He stated the romantic phase of the relationship began in approximately March 2023.

    d.      DAVID also admitted to ordering rideshare service for MV1 so she could leave her house to meet him at or near his place of work to engage in sexual activity.

    e.      DAVID stated that the sex between himself and MV1 was consensual.

**D.      Second Interview with MV1 on August 23, 2024**

8.      On August 23, 2024, HPD conducted a follow up interview with MV1, which I have also reviewed in its entirety.  In that interview, MV1 provided the following additional, relevant information:

a.      MV1 clarified that most of the time, DAVID was ordering the rideshare rides for MV1.

b.      MV1 was asked about several screenshots recovered from DAVID's locker at work that depicted MV1 and DAVID and appeared to be screenshots or stills from a video.  MV1 was asked about these videos, because they involved the filming of sexual intercourse between MV1 and DAVID.  MV1 said that it was DAVID's idea to take videos of the two of them.  In the beginning, DAVID would take these videos on his phone, but then his wife saw the videos and that is how she found out about the relationship between MV1 and DAVID.

c.      MV1 explained as a result of this, and DAVID not being able to "hold" the videos, they began to take the videos on her phone.

d.      MV1 was asked how many videos were made between her and DAVID to which MV1 replied a lot, and then clarified about 30 videos were made.

  e. MV1 stated that she had sent DAVID some of the videos that were made on her phone via the Signal application. MV1 stated that she no longer had her Signal account.

  f. MV1 explained that DAVID could not save the videos to his phone because whatever DAVID saved to his phone would show up on his wife's phone. MV1 said DAVID had a Samsung Galaxy phone.

  g. MV1 described DAVID's phone as being in a dark blue case and that he kept the phone on him when he was out and about.

**E. Limited Search of MV1's Cellular Telephone**

  9. On August 23, 2024, MV1 consented to HPD Officers searching her phone, an Apple iPhone 14 Pro Max, for images and videos of MV1 and DAVID engaged in sexual activity, location data and rideshare information. Pursuant to this consent, a forensic analyst with HPD conducted a full file extraction of MV1's cellular telephone before returning the phone to MV1. An HPD detective then searched the extracted data and "seized" a limited subset of that data, namely, data specifically related to images and videos of MV1 and DAVID engaged in sexual activity, location data, and data related to the use of rideshare applications, consistent with MV1's written consent, which stated that MV1 consented HPD's search of MV1's phone to "images and photos of the victim engaged in any sexual

activity, Location Data, user data within the UBER app, and any and all other data related to this incident."

10. The limited forensic search of MV1's cellphone revealed 97 video files of MV1 and DAVID engaged in sexual activity, 78 email messages referring to rideshare trips taken by MV1, and GPS location data. A review of the video files located on MV1's cellphone show DAVID either holding or positioning the phone just prior to, or right after the sexual activity. For example:

    a. File name ending 08580b (created 2/23/24) – The phone/camera is being held by DAVID with MV1 laying on her right side wearing a light-colored bra and no panties. DAVID is observed penetrating MV1's vagina while kneeling. MV1 can be heard saying "let it happen, let it happen." DAVID then reaches out and pulls MV1's bra down, exposing her breasts and then begins to fondle her breast.

    b. File name ending cb1089 (created 2/20/24) – The phone/camera is being operated by DAVID. DAVID is standing on a mattress naked with MV1 wearing only a light-colored bra, kneeling in front of him, performing fellatio on him. DAVID can be heard saying "[S]ay it" and MV1 replies, "I'm a slut."

    c. File name ending 76d9d4 (created 2/21/24) –The phone/camera is placed at the side of the mattress towards one end. MV1's has her hand

9

stretched out to the camera and brings her arm back in towards her. MV1 is laying on her back wearing a black and white check pattern bra. DAVID is wearing only a Federal Fire baseball cap. At varying times DAVID has one or two knees on the mattress with his penis in MV1's mouth. The video shows MV1 performing fellatio on the DAVID. DAVID then reaches out to retrieve the camera and ends the video.

11. On or about January 31, 2025, HPD closed its investigation of the above-described conduct, and the case was conferred for prosecution with the Department of the Prosecuting Attorney for the City of Honolulu (PAT). On or about April 3, 2025, the case was declined for prosecution by PAT. The case was subsequently referred to the FBI for further investigation of possible production of child sexual abuse materials. The original, full file extraction of MV1's cellular telephone was maintained by HPD and later transferred to FBI custody.

12. On June 23, 2025, FBI Honolulu executed Federal Search Warrant MJ 25-00774 KJM, authorizing a full review of MV1's cellular telephone. This affiant has reviewed MV1's cellular telephone pursuant to MJ 25-0074 KJM, and has located on the extraction the videos described above, along with the emails and Uber information.

13. Based on my training and experience, I know that Apple iPhones are not manufactured in the State of Hawaii and therefore are transported in interstate and/or foreign commerce before reaching Hawaii.

14. A review of HPD's arrest and investigative records indicate DAVID was born in March, 1988 and therefore is currently 37 years old.

## CONCLUSION

WHERFORE, based on the aforementioned facts, I respectfully submit that probable cause exists that ELIAS DAVID committed the offense of Production of Child Pornography, in violation of 18 U.S.C. § 2251(a).

//

//

## REQUEST FOR SEALING

I further request that the Court order that all papers in support of this application, including the affidavit and warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known fully to the target of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give the target an opportunity to flee from prosecution, destroy or tamper with evidence, change patterns of behavior or otherwise seriously jeopardize the investigation.

Furthermore, sealing these papers will protect the law enforcement agents who execute the requested arrest warrant.

Respectfully submitted,

_____
SHERWIN CHANG
Special Agent
Federal Bureau of Investigation

This Criminal Complaint and Agent's Affidavit in support thereof were presented to, approved by, and probable cause to believe that the defendant above-named committed the charged crime(s) found to exist by the undersigned Judicial Officer on this 1st day of December, 2025, at Honolulu, Hawaii.

Sworn to under oath before me telephonically, and attestation acknowledged pursuant to Federal Rule of Criminal Procedure 4.l(b)(2), on this 1st day of December, 2025, at Honolulu, Hawaii.



_____
Wes Reber Porter
United States Magistrate Judge